## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
JOEL M. CARVER,                   )
                                  )
                 Plaintiff,       )
                                  )
          v.                      )      1:13CV13
                                  )
CAROLYN W. COLVIN,                )
Acting Commissioner of Social     )
Security,                         )
                                  )
                 Defendant.       )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Joel M. Carver, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Act and Supplemental Security Income ("SSI") under Title XVI of the Act. (Docket Entry 1.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 10, 13). For the reasons that follow, the Court should remand the matter for further consideration.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on October 15, 2009, alleging for both applications a disability onset

date of December 23, 2008. (Tr. 57, 67, 201-09.)[1] Upon denial of Plaintiff's applications initially (Tr. 77-78) and on reconsideration (Tr. 101-02), he requested a hearing de novo before an Administrative Law Judge ("ALJ"). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 33-54.) By decision dated April 20, 2011, the ALJ determined that Plaintiff was not disabled under the Act. (Tr. 24-32.) On August 1, 2012, the Appeals Council denied Plaintiff's request for review (Tr. 5-7), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through June 30, 2012.

. . . .

2. [Plaintiff] has not engaged in substantial gainful activity since December 23, 2008, the alleged onset date.

. . . .

3. [Plaintiff] has the following severe impairments: degenerative joint disease of the right shoulder; left eye blindness due to glaucoma; and obesity.

. . . .

---

[1] According to the administrative record, Plaintiff first protectively filed applications for SSI and DIB on April 6, 2009. (Tr. 55-56, 201-07.) Plaintiff then protectively filed applications for SSI and DIB on October 15, 2009. (Tr. 57, 67, 208-09.) The ALJ's ruling identifies April 6, 2009, as the protective filing date for Plaintiff's DIB application and October 15, 2009, as such date for Plaintiff's SSI application, without further explanation. (Tr. 24.) However, the record reflects that Plaintiff only requested reconsideration as to the applications protectively filed on October 15, 2009 (see Tr. 55-100) and thus abandoned the applications filed on April 6, 2009.

> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . .
>
> . . . .
>
> 5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . but must avoid climbing ladders, moving machinery, and other hazards; jobs requiring fine visual acuity or acute perception; or significant reading.

(Tr. 26-27 (internal parenthetical citations omitted).)

In light of the foregoing findings regarding residual functional capacity, the ALJ determined that Plaintiff may not be able to perform any past relevant work. (Tr. 30.) However, the ALJ noted that a significant number of other jobs existed in the national market that he could perform. (Tr. 31-32.) Accordingly, the ALJ ruled that Plaintiff did not have a disability, as defined in the Act, at any time from the alleged onset date through the date last insured. (Tr. 32.)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead,

3

the Court "must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before

4

[the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity

---

[3]  "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## B. Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) the ALJ failed to properly consider Plaintiff's one-eye blindness in formulating Plaintiff's RFC and the hypothetical question (Docket Entry 11 at 3-4);

(2) the ALJ failed to conduct a function-by-function assessment to determine Plaintiff's RFC and, further, that determination had no basis in any medical opinion (id. at 5-8); and

(3) the ALJ failed to properly evaluate Plaintiff's subjective complaints of pain (id. at 8-12).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 14 at 3-19.)

### 1. Plaintiff's Left-Eye Blindness

Plaintiff first argues that the ALJ erred by finding (at step two) that Plaintiff has left-eye blindness due to glaucoma and then disregarding that finding (at steps four and five) when assessing Plaintiff's RFC and formulating the hypothetical question to the VE. (Docket Entry 11 at 3-4.) As a result, according to Plaintiff, although the RFC describes Plaintiff's limitations as to the need to "'avoid . . . fine visual acuity or acute perception[,] or significant reading[,]' . . . . [such] limitations . . . do not represent *all* of the limitations that [Plaintiff] had because of his left-eye blindness." (Docket Entry 11 at 3 (quoting Tr. 27).)

8

Specifically, Plaintiff alleges that the ALJ erred by not "mention[ing] either in the RFC or in the hypothetical an obvious limitation caused by one-eye blindness - limited depth perception." (Id.)

However, the finding at step two that Plaintiff has a severe impairment - i.e., one-eye blindness - does not require the ALJ to include any limitations from such impairment when stating the Plaintiff's RFC. In that regard, Plaintiff appears to misinterpret the relationship between step two and the ALJ's assessment of Plaintiff's RFC at step four:

> The determination of a "severe" impairment at step two of the sequential evaluation process is a de minimis test, designed to weed out unmeritorious claims. See Bowen v. Yuckert, 482 U.S. 137 (1987). A finding of *de minimis* limitations is not proof that the same limitations have the greater significant and specific nature required to gain their inclusion in an RFC assessment at step four. See, e.g., Sykes v. Apfel, 228 F.3d 259, 268 n.12 (3d Cir. 2000).

Hughes v. Astrue, No. 1:09CV459, 2011 WL 4459097, at *10 (W.D.N.C. Sept. 26, 2011) (unpublished); see Burkstrand v. Astrue, 346 F. App'x 177, 180 (9th Cir. 2009) ("To the extent [a claimant] suggests that a finding of severe impairment at Step 2 necessarily requires limitations on a claimant's ability to perform basic work activities, this argument has no merit."); Felton-Miller v. Astrue, 459 F. App'x 226, 230 (4th Cir. 2001) ("Step two of the sequential evaluation is a threshold question with a de minimis severity requirement.").

Moreover, the ALJ extensively discussed Plaintiff's visual impairments as they pertain to Plaintiff's RFC. (See Tr. 27-30.) In that discussion, the ALJ weighed apparently inconsistent evidence from two consultative examinations: whereas Dr. Barber determined that Plaintiff's left-eye vision qualified as blind with or without glasses (Tr. 345), Dr. Friedland concluded that "[Plaintiff] has the potential for good vision in the [l]eft eye [with surgery] if there is minimal delay" (Tr. 336). In that regard, the ALJ explained that "[t]he vision-related findings offered by Dr. Friedland are given more weight because she is a board certified ophthalmologist whereas Dr. Barber is an internist." (Tr. 30.) Nor do these consultative examinations necessarily contradict each other, because Dr. Barber did not address any surgical measures for Plaintiff's visual impairments. (See Tr. 342-347.) The ALJ also relied on Plaintiff's statement "that he drives a vehicle and feels able to do so with the help of non-prescription reading glasses[,] [concluding that] [Plaintiff's] ability to drive is inconsistent with his statements regarding inability to perform other functions due to his vision." (Tr. 28.)

Furthermore, the resulting RFC includes limitations as to vision by noting that Plaintiff "must avoid . . . jobs requiring fine visual acuity or acute perception; or significant reading." (Tr. 27.) First, the limitation as to "acute perception" generally would appear to encompass a limitation as to depth perception

10

specifically.  The fact that the ALJ raised the issue of depth perception with the VE, as discussed below, supports the view that the ALJ intended the term "acute perception" to include depth perception.  (See Tr. 52.)  Second, those limitations identified by the ALJ appear consistent with Dr. Barber's characterization that "[Plaintiff] would not be able to do a job that required good vision."  (Tr. 347.)  That Plaintiff disagrees with the conclusions the ALJ drew from the record evidence does not support remand.  See Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ.").  Because the ALJ adequately explained his determination that Plaintiff does not suffer from complete blindness in his left eye, substantial evidence supports the ALJ's determination of Plaintiff's RFC as it pertains to Plaintiff's visual impairments.

Plaintiff makes a similar argument as to the ALJ's hypothetical question to the VE, asserting that "[t]he VE was not told that [Plaintiff] was blind in one eye, nor that [Plaintiff] had limited peripheral vision, nor that he had the other limitations mentioned in the medical literature . . . ."  (Docket Entry 11 at 4.)  The ALJ formulated the following hypothetical question to the VE:

> I want you to assume a hypothetical individual of the same age, education and work background as that of

> [Plaintiff].  I further want you to assume the individual
> is limited to the performance of light work as that term
> is defined in the regulation.  However, the individual
> needs to avoid climbing ladders or similar hazards; being
> around dangerous moving machinery; driving; and would
> also need a job where there's no fine visual acuity
> required.  So stay away from jobs requiring any
> significant reading or that sort of thing.

(Tr. 51.)  In addition, the ALJ subsequently asked the VE, "Would any of these [proposed available] jobs you described require any kind of significant depth perception?  More depth perception than being able to drive short distances in a car?," to which the VE answered, "No.  I don't believe so."  (Tr. 52.)

"In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Hines, 453 F.3d at 566 (internal brackets omitted). However, "a hypothetical question is unimpeachable if it *adequately reflects* a residual functional capacity for which the ALJ had sufficient evidence." Fisher v. Barnhart, 181 F. App'x 359, 364 (4th Cir. 2006) (emphasis in original) (internal quotation marks and brackets omitted).  Here, the ALJ's hypothetical questions incorporated all the impairments expressed in Plaintiff's RFC, which, as discussed above, substantial evidence supports.  In fact, the ALJ provided greater detail than that present in the RFC by inquiring as to whether any of the VE's proposed jobs required "significant depth perception."  (Tr. 52.)

12

Moreover, even if the ALJ had omitted severe impairments from the hypothetical question, "courts in the Fourth Circuit have found it to be harmless error for an ALJ to omit a limitation in the hypothetical question when the resulting jobs presented by the VE accommodate the limitation," Powell v. Astrue, Civ. No. SKG 10-02677, 2013 WL 3776948, at *9 (D. Md. July 17, 2013) (unpublished) (citing cases). Notably, Plaintiff has not argued that any of the jobs proposed by the VE actually require greater visual ability (including greater depth perception) than that possessed by Plaintiff. (See Docket Entry 11 at 3-4; see also Tr. 31 (listing jobs proposed by VE).) Nor does the Dictionary of Occupational Titles indicate that any of those jobs would require vision-related capacity lacked by Plaintiff. See Dictionary of Occupational Titles §§ 207.685-014, 323.687-014, and 915.473-010 (4th ed. rev. 1991).

Plaintiff additionally contends that Green v. Commissioner of Soc. Sec., Civ. A. No. 00-23, 2001 WL 364921 (E.D. La. Apr. 20, 2001), supports reversal. (Docket Entry 11 at 3.) In that case, the court determined that the ALJ's failure to tell the VE about a variety of the claimant's conditions, including one-eye blindness, constituted reversible error. See Green, 2001 WL 364921, at *5. The district court's primary basis for reversal in that case appeared to be the ALJ's failure to include in the hypothetical question the claimant's major depression and deficiencies of

13

concentration, despite finding that the claimant actually suffered from those mental impairments. Id. Furthermore, those mental limitations would have "preclude[d] the jobs for which [the VE] had found [the claimant] eligible," id., unlike the present situation where Plaintiff has not shown that including greater detail as to Plaintiff's visual limitations would have eliminated any of the jobs proposed by the VE. Green thus does not provide a basis to overturn the ALJ's determination.

In sum, Plaintiff's first ground lacks merit.

## 2. RFC Formulation

Second, Plaintiff contends that the ALJ assessed Plaintiff's RFC without conducting the required function-by-function analysis and without relying on any medical opinion. (Docket Entry 11 at 5-8.) In that regard, Plaintiff avers that "[n]owhere in the ALJ's decision is there any finding as to how many hours a day [Plaintiff] can sit, walk, stand, lift, carry, push [or] pull." (Id. at 5.) Moreover, according to Plaintiff, "[that] error was aggravated by the fact that the ALJ did not rely on the physical RFC assessments proffered by the State agency consultants or anyone else. [The ALJ] dismissed the opinions of the state physicians as having little weight, and made his own RFC assessment." (Id.)

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ must determine a claimant's

14

exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562–63; 20 C.F.R. §§ 404.1545(b), 416.945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. §§ 404.1567, 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination. See, e.g., Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000). As to the role of the function-by-function analysis in that determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96-8p").

15

The Fourth Circuit recently addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. <u>Mascio v. Colvin</u>, 780 F.3d 632, 636-37 (4th Cir. 2015). In particular, the Fourth Circuit examined the use by the ALJ of the following boilerplate language:

> "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms <u>are not credible to the extent they are inconsistent with the above residual functional capacity assessment</u>."

<u>Id.</u> at 639 (emphasis added) (quoting the administrative record). In that regard, "the Fourth Circuit held that this boilerplate 'gets things backwards by implying that ability to work is determined first and is then used to determine credibility.'" <u>Salmon v. Colvin</u>, 1:12CV1209, 2015 WL 1526020, at *4 (M.D.N.C. Apr. 2, 2015) (unpublished) (Biggs, J.). Accordingly, "[t]he court explained that the ALJ should have compared [the claimant's] alleged functional limitations to the other evidence in the record, not to [her] RFC." <u>Id.</u> (citing <u>Mascio</u>, 780 F.3d at 639).

Although the Fourth Circuit stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," <u>Mascio</u>, 780 F.3d at 636, it concluded that "'remand may be appropriate where an ALJ fails to assess a claimant's

16

capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting <u>Cichocki v. Astrue</u>, 729 F.3d 172, 177 (2d Cir. 2013)).

In <u>Mascio</u>, the district court had ruled "that "SSR 96-8p does not require an ALJ to produce a detailed statement in writing — a true function-by-function analysis, and that a narrative discussion of a claimant's symptoms and medical source opinions is sufficient," <u>Mascio v. Colvin</u>, No. 2:11CV65-FL, 2013 WL 3321577, at *3 , (E.D.N.C. July 1, 2013) (unpublished), <u>rev'd</u>, 780 F.3d 632 (4th Cir. 2015), or in the alternative, that such failure to articulate the function-by-function analysis in writing constituted harmless error, <u>id.</u> On appeal, the Fourth Circuit remanded because (amongst other reasons):

> [T]he ALJ has determined what functions he believes [the claimant] can perform, but his opinion is sorely lacking in the analysis needed for us to review meaningfully those conclusions. In particular, although the ALJ concluded that [the claimant] can perform certain functions, he said <u>nothing about [the claimant's] ability to perform them for a full workday</u>. The missing analysis is especially troubling because the record contains conflicting evidence as to [the claimant's] residual functional capacity — evidence that the ALJ did not address.

<u>Mascio</u>, 780 F.3d at 636-37. Accordingly, in light of <u>Mascio</u>, "the [C]ourt must determine whether the ALJ's RFC analysis considered the relevant functions, whether his decision provides a sufficient

17

basis to review his conclusions, and, ultimately, whether that decision is supported by substantial evidence in the record." Scruggs v. Colvin, No. 3:14CV466-MOC, 2015 WL 2250890, at *4 (W.D.N.C. May 13, 2015) (unpublished) (citing Mascio, 780 F.3d at 636-37).

In the instant case, the ALJ used the identical boilerplate language and similarly failed to perform a written function-by-function analysis, i.e., articulate the extent of Plaintiff's exertional capabilities as they relate to his various impairments, before assigning an RFC of light work. (See Tr. 27-30.) Moreover, like in Mascio, here the administrative record reflects conflicting evidence not addressed by the ALJ, particularly concerning Plaintiff's ability to stand or walk for a full workday. For instance, the ALJ indicates that he "[gave] weight to the findings of [Dr. Barber]" and explained that "[Dr. Barber's] findings from [his] examination in relation to the claimant's physical abilities are supported by other medical evidence of the record." (Tr. 30.) In fact, the ALJ appeared to rely primarily on the findings of Dr. Barber, because he did not identify another medical source concerning Plaintiff's physical impairments to which he assigned much weight. (See Tr. 27-30.)

In that examination, Dr. Barber concluded that, due to Plaintiff's right knee pain, "[i]t would be difficult for [Plaintiff] to do a job that required prolonged periods of standing

18

or walking." (Tr. 347.) Dr. Barber further concluded that Plaintiff "has gout attacks three to four times a year [and that] [d]uring gout attacks it would be difficult for him to do a job that required prolonged periods of standing or walking." (Id.) However, light work "requires a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls," 20 C.F.R. § 404.1567, and thus the inability to stand or walk for prolonged periods does not appear consistent with light work, see Harrison v. Colvin, No. 1:10-CV-18, 2013 WL 1661096, at *2, (M.D.N.C. Apr. 17, 2013) (unpublished) (Eagles, J.) ("[B]y finding that [the claimant] was capable of performing light work, the ALJ implicitly found that she was capable of standing or walking for approximately six hours in an eight-hour work day.").

Moreover, although the State Agency physicians assessed Plaintiff as capable of standing or walking six hours in an eight-hour workday (Tr. 62, 72, 85, 96), the ALJ "[gave] little weight to the State Agency assessments [because they] do not factor in the combined effect of [Plaintiff's] impairments and the opinions are not supported by other objective findings from the record" (Tr. 30). Thus, the conclusion that Plaintiff can walk or stand for at least six hours in a workday - implied by the ALJ's assignment of an RFC of light work to Plaintiff - has support only in the medical opinions to which the ALJ assigned little weight.

The ALJ further failed to provide any explanation for deeming noncredible Plaintiff's statements concerning his inability to stand or walk for a full workday. (See Tr. 27-30.) In that regard, the ALJ noted that Plaintiff "said he experiences gout flare ups, mainly affecting his feet, a total of three months out of the year, with each flare up lasting about three weeks." (Tr. 28.) As to Plaintiff's abilities when he does not experience gout flare-ups, the ALJ remarked that Plaintiff "stated he can stand for about an hour before the pain requires him to sit . . . . [and] also said that he can sit for about 20 minutes before the [knee] pain becomes too great [when he stands up]." (Tr. 28.) Although the ALJ discussed Plaintiff's credibility as to his visual impairments, the ALJ did not discuss his rejection of Plaintiff's statements concerning his ability to stand of walk beyond the boilerplate assertion that "these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." (Tr. 28.) "Nowhere, however, does the ALJ explain how he decided which of [the claimant's] statements to believe and which to discredit, other than the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering [the claimant's] [RFC]. The ALJ's lack of explanation requires remand." Mascio, 780 F.3d at 640.

Plaintiff further contends that the ALJ erred in "not rely[ing] on the RFC assessments proffered by the state agency

consultants or any [other medical source,] . . . . [thus,] leav[ing] an 'evidentiary deficit' which the ALJ may not fill with his or her own lay opinion of RFC." (Docket Entry 11 at 5.) In that regard, Plaintiff asserts that, "although a final 'RFC assessment' is ultimately left to the ALJ, RFC itself is at least partly a *medical* question which requires medical expertise as a foundation." (Id. (emphasis in original).) In support, Plaintiff cites to a recent case from a neighboring district (id. at 6-7 (citing Nicholson v. Astrue, 2010 WL 5406997, at *6 (W.D.N.C. Oct. 29, 2010) (unpublished))), in which that court reversed the ALJ's RFC determination as "only [] result[ing] from his own unqualified lay opinion," Nicholson, 2010 WL 5406997, at *6. In that case, the ALJ had relied exclusively on an RFC assessment provided by an SSA employee (a Single Decision Maker, or "SDM") with no medical credentials and the court thus concluded that substantial evidence did not support the ALJ's RFC assessment. See id. ("In reality, no one with medical credentials provided an RFC assessment for the State Agency. The ALJ noted the absence of an opinion from an accepted medical source, but then proceeded to rely exclusively on the SDM's opinion, even though he had no medical credentials either.").

The instant case presents a different scenario, in which the ALJ relied on information from multiple, credentialed medical sources in determining Plaintiff's RFC. (See Tr. 27-30.) The

Fourth Circuit recently stated (in an unpublished opinion) that "[RFC] is an administrative assessment made by the Commissioner based on all relevant evidence in the case record," Felton-Miller, 459 F. App'x at 230-31 (citing 20 C.F.R. §§ 404.1546(c), 416.946(c); SSR 96-8p), and found that an "ALJ [may] properly base[] his RFC finding on [a claimant's] subjective complaints, the objective medical evidence, and the opinions of treating, examining, and nonexamining physicians," id. Here, even though the ALJ failed to properly conduct a function-by-function analysis, he apparently weighed Plaintiff's statements, the treatment notes, and the consultative examinations in determining Plaintiff's RFC. (Tr. 27-30.) In other words, despite the above-identified discrepancies in the ALJ's reasoning as to the function-by-function analysis, the ALJ did not specifically commit error by failing to adopt an RFC assessment based on relevant medical opinions in the record.

In sum, the ALJ neglected to assess relevant functional limitations of Plaintiff - the ability to walk or stand for a full workday - which may preclude Plaintiff's ability to perform light work for part (due to gout) or all (due to right-knee pain) of the year. For this reason, and in light of Mascio, the Court should remand this case.

3. **Subjective Complaints of Pain**

Finally, Plaintiff contends that the ALJ erred in evaluating his subjective complaints of pain. (Docket Entry 11 at 8-14.)

22

Specifically, Plaintiff claims that the "ALJ committed error by rejecting [Plaintiff's] pain testimony regarding his shoulder and knee, and by failing to give adequate reasons for [that rejection]," in violation of Fourth Circuit precedent. (Id. at 8 (citing Craig, 76 F.3d at 594-95), 10-12.)  In particular, Plaintiff asserts that "[i]t is logically impossible to have made this finding [that insufficient medical evidence exists to support the alleged pain] after having found that the objective evidence showed [Plaintiff's] degenerative joint disease of the right shoulder to be reasonably likely to produce pain in the amount and degree alleged." (Id. at 8 (internal quotation marks omitted).)

Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements ("SSR 96-7p"), as applied by the Fourth Circuit in Craig, 76 F.3d at 594-95, provides a two-part test for evaluating a claimant's statement about symptoms.  "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'"  Id. at 594 (quoting 20 C.F.R. § 404.1529(b)). Notwithstanding the foregoing:

> This threshold test does not, as the regulation is
> careful to emphasize, entail a determination of the
> "intensity, persistence, or functionally limiting
> effects" of the claimant's asserted pain.  See 20 C.F.R.

23

§§ 416.929(b) & 404.1529(b). At this stage of the inquiry, the pain claimed is not directly at issue; the focus is instead on establishing a determinable underlying impairment — a statutory requirement for entitlement to benefits, see 42 U.S.C § 1382c(a)(3)(A) — which could reasonably be expected to be the cause of the disabling pain asserted by the claimant.

Id. at 594. If a claimant meets that threshold obligation, the fact finder must proceed to part two and evaluate the intensity and persistence of the claimant's pain, as well as the extent to which it affects her ability to work. Id. at 595. In making this evaluation, the fact finder:

must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (internal citations and quotation marks omitted).

At the outset, Plaintiff mis-characterizes the two-part evaluation of pain outlined in Craig by claiming that, after finding sufficient medical evidence to satisfy part one, "[i]t is logically impossible" to then find at part two that the pain allegations "'are not supported by much medical evidence'" (Docket Entry 11 at 8 (quoting Tr. 28).) Because the first part represents only a threshold inquiry as to whether a claimant has an impairment capable of producing pain, the ALJ may find that medical evidence sufficient to satisfy part one does not meet the requirements of

24

part two.  See Smith v. Astrue, 457 F. App'x 326, 329 (4th Cir. 2011) ("*Craig* notes that [part] one of the pain analysis is focused solely 'on establishing a determinable underlying impairment — a statutory requirement for entitlement to benefits.'" (quoting Craig, 76 F.3d at 594)).  "*Craig* explains that, after the claimant crosses this threshold, 'the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.'"  Id. (quoting Craig, 76 F.3d at 595).

Here, at part one of the pain analysis, the ALJ made a threshold determination that Plaintiff has impairments which could reasonably be expected to cause his alleged symptoms.  (Tr. 28.) The ALJ next explained, using the boilerplate language identified in Mascio (as discussed in Part II.B.2, above), that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC]."  (Tr. 28.)  In Mascio, the Fourth Circuit explained that "a claimant's pain and [RFC] are not separate assessments to be compared with each other.  Rather, an ALJ is required to consider a claimant's pain as part of his analysis of [RFC]."  Mascio, 780 F.3d at 639.  However, the court then noted that such an "error would be harmless if [the ALJ] properly analyzed credibility [as to the claimant's statements concerning pain] elsewhere."  (Id.)  In that case, the ALJ found the claimant's statements concerning pain not credible because the

25

claimant had lied to her doctor about her marijuana use and she had been convicted for selling her prescribed pain medication. (Id.) Notwithstanding those reasons, the Fourth Circuit held that the ALJ failed to sufficiently explain "which of the claimant's statements to believe and which to discredit" and that the insufficient explanation necessitated remand. Id. at 640.

Here, beyond the above-referenced boilerplate language, the ALJ did not offer any other explanation for his determination that Plaintiff's statements concerning pain specifically lacked credibility. (Tr. 27-30.) Instead, the ALJ generally described "the inconsistency between the claimant's statements and the medical evidence of record, as well as the claimant's failure to seek treatment for his impairments." (Tr. 28.) The ALJ then thoroughly explained those factors as they relate specifically to Plaintiff's visual impairments, but failed to do so as to Plaintiff's physical impairments or any related pain.[6] In that regard, the ALJ did not discuss whether Plaintiff's daily activities, statements made to various physicians, or some other factor led the ALJ to find Plaintiff's statements regarding his physical impairments not credible. (See Tr. 27-30.) Thus, the ALJ's decision does not make clear whether "the inconsistency between the claimant's statements and the medical evidence of

_____

[6] Although the ALJ engaged in a narrative discussion of Plaintiff's treatment records concerning pain in his right shoulder and leg, he did not express whether these records support or undermine the credibility of Plaintiff's statements concerning pain. (See Tr. 29.)

26

record, as well as the claimant's failure to seek treatment for his impairments" (Tr. 28) damaged Plaintiff's credibility as to his physical impairments and the resulting pain as well as Plaintiff's credibility as to his visual impairments.

Moreover, the ALJ suggested that at least some of Plaintiff's statements qualified as credible, by noting that "the above [RFC] is supported by . . . the credible portion of [Plaintiff's] testimony and other statements." (Tr. 30.) However, like in Mascio, 780 F.3d at 640, the ALJ failed to provide any explanation as to which statements he believed and which he discredited (see Tr. 27-30).

Defendant argues that the ALJ adequately addressed Plaintiff's credibility by raising the issue of Plaintiff's failure to seek treatment for his conditions. (Docket Entry 14 at 17.) In that regard, Defendant cites to a Fourth Circuit case in which the ALJ found a claimant's statements concerning pain not credible where the claimant did not fill his prescription for pain medication and discontinued his physical therapy. (See id. (citing Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1992)).) However, the ALJ's opinion does not clarify whether the failure to seek treatment damages Plaintiff's credibility as to all Plaintiff's impairments or Plaintiff's visual impairments only. (See Tr. 28.) Although the ALJ specifically discusses how Plaintiff's failure to pursue surgery renders Plaintiff's vision testimony not credible, he

27

provides no such explanation for Plaintiff's other impairments and thus the reach of the ALJ's general statement concerning failure to seek treatment remains unclear. (See id.) In <u>Hunter</u>, the Fourth Circuit found the ALJ's determination of that claimant's credibility supported by substantial evidence where it was "based upon specific evidence in the record." <u>Hunter</u>, 993 F.2d at 36. The ALJ did not offer any such specific evidence here as to <u>how</u> Plaintiff's failure to seek treatment rendered his statements of pain regarding his physical impairments not credible and thus Defendant's argument fails.

In sum, the ALJ's failure to articulate any reason (beyond the boilerplate language) for rejecting Plaintiff's complaints of pain regarding his physical impairments constitutes error and, thus, the Court should remand.

### III. CONCLUSION

Plaintiff has established grounds for relief as to his contentions that the ALJ failed to properly conduct a function-by-function analysis and failed to properly assess his subjective complaints of pain.

28

**IT IS THEREFORE RECOMMENDED** that Defendant's decision finding no disability be reversed and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings to conduct a proper function-by-function analysis and to appropriately assess Plaintiff's credibility as to his subjective complaints of pain. As a result, Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) should be denied and Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 10) should be granted in part (i.e., to the extent it requests remand).

                              /s/ L. Patrick Auld
                            **L. Patrick Auld**
                    **United States Magistrate Judge**


July 6, 2015